1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JOHN FITZPATRICK, an individual,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF LABOR OFFICE OF WORKERS COMPENSATION PROGRAMS,

Defendant.

Case No.: 21cv01561-LL-JLB

**ORDER:**

**(1) GRANTING DEFENDANT'S MOTION TO DISMISS and**
**(2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

**[ECF Nos. 16, 17, 18, 20]**

## I.   INTRODUCTION

Plaintiff John Fitzpatrick, an individual appearing *pro se*[1] ("Plaintiff"), brings this action against Defendant the United States Department of Labor, Office of Workers Compensation Programs ("DOL-OWCP" or "Defendant").  ECF No. 1.

Before the Court are (1) Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 16, and (2) Plaintiff's Motion for Leave to File a First Amended Complaint, ECF No. 20.  The motions were submitted on the papers without oral argument pursuant to Civil

---

[1]      In reviewing the instant motion, the Court is mindful that "[a] document filed *pro se* is to be liberally construed … and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

1

Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure ("FRCP"). After considering the papers submitted, supporting documentation, and applicable law, the Court (1) **GRANTS** Defendant's Motion to Dismiss and (2) **DENIES** Plaintiff's Motion for Leave to Amend.

## II.   BACKGROUND

### A.   Statement of Facts[2]

On December 11, 2015, Plaintiff alleges he was involved in an industrial slip and fall accident and injured his metatarsal bone aboard the U.S.S. San Diego (LPD-22), while working as an employee of General Dynamics Information Technology, Inc. ("GDIT"), a Virginia corporation and government contractor.  ECF No. 1 at 4-5[3]; ECF No. 20-1 at 3:2, 7:21-24.  Broadspire, LLC is GDIT's carrier for its workers compensation insurance.  ECF No. 20-1 at 5:18-21.

On March 30, 2016, he underwent magnetic resonance imaging ("MRI") of his right ankle.  ECF No. 1 at 8.  He claims this MRI showed injury to his right ankle, but the Case Manager and Claims adjuster misrepresented it as normal, denying him benefits under the Longshore and Harbor Workers Compensation Act, 33 U.S.C. §§ 901, *et seq.* (the "LHWCA").  *Id.*; *see also* ECF No. 20-1 at 3:5-9.

In May 2016, Plaintiff alleges that GDIT reported the metatarsal injury to the OWCP, five months delinquent.[4]  ECF No. 1 at 5.  He pleads that GDIT neglected to

---

[2]    The majority of the facts set forth are taken from the operative complaint, and for purposes of ruling on Defendant's motion to dismiss, the Court assumes the truth of the allegations pled and liberally construes all allegations in favor of the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

[3]    Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

[4]    Employers must provide a report of any injury causing the loss of more than one shift within ten days from the date of injury, which meant GDIT needed to report the injury by approximately December 21, 2015.  33 U.S.C. § 930(a).  However, where an employer fails to timely report an injury, the limitations period for filing a claim does not begin to run "until such report shall have been furnished as required."  *Id.* at § 930(f).  Thus, even if GDIT negligently failed to report the injury, it should not have impacted Plaintiff's claim.

include the torn PB tendon which had been discovered" on March 30, 2016. *Id.*

On July 19, 2016, Plaintiff alleges he was terminated from his employment with GDIT, without adjudication or proper administration of his claim, and denied future medical treatment. ECF No. 1 at 8; ECF No. 20-1 at 6:16-17. Only *after* this termination did Plaintiff submit forms for compensation to both California and the LHWCA programs. ECF No. 20-1 at 6:16-7:1. However, he claims that at some point, and unbeknownst to him, "he was rehired by GDIT as a ghost employee, unable to get benefits either from worker's compensation or his company sponsored insurance." *Id.* at 7:1-6.

On March 5, 2018, Plaintiff alleges he discovered that his March 30, 2016 MRI did, in fact, show additional compensable injuries to his right ankle, so he immediately filed the Employee's Claim for Compensation Form LS-203.[5] ECF No. 1 at 8. That same day, he reported the newly discovered concealed tendon injury to the OWCP Long Beach, California regional director's office. ECF No. 1 at 2. He states that the Division of Longshore and Harbor Workers' Compensation (the "DLHWC") directed him to file the Pre-Hearing Statement Form LS-18, saying an administrative law judge ("ALJ") would determine his claim. *Id.*

On April 12, 2018, Plaintiff had new MRI scans of his right ankle done. ECF No. 1 at 8. On April 26, 2018, he alleges these new scans were shared with Dr. Tontz, Jr., which is when his bi-weekly benefit payments restarted.[6] *Id.*

On August 28, 2018, Plaintiff alleges that while undergoing an examination by Dr. Kent Feldman, he sustained additional "consequential, compensable injuries," which he timely reported. ECF No. 1 at 2.

On December 10, 2018, Plaintiff alleges that he had a hearing via telephone, during which he asked to be heard regarding an independent medical examination, and he also

---

[5] Because Plaintiff alleges that the additional injuries were concealed, if the Court assumes the truth of these allegations as it must do when ruling on the instant motion, then, Plaintiff had no reason to be aware of the relationship between the employment and additional injury, and the additional injury was timely filed. 33 U.S.C. § 933(a).

[6] This assumes Plaintiff received some form of federal or state benefits at some point.

requested financial restoration of the missing 20 months of benefits he alleges he was owed. ECF No. 1 at 10, ¶ 7.  He pleads both requests were denied, and the judge continued the claim to June 2019 for a hearing.  *Id.*

On January 29, 2019, Plaintiff alleges that GDIT's attorney took Plaintiff's 21.5 months of bi-weekly entitlement pay, converted $31,152.00 of his entitlement to refund the California Employment Development Department for State Disability Insurance while retaining the balance of approximately $44,000.00.  ECF No. 1 at 10, ¶ 5.

On August 5, 2019, Plaintiff filed a third Form LS-203, when he discovered a source of his additional injuries.  ECF No. 1 at 12, ¶ 5.  He pleads that he was denied treatment from the workers compensation doctors and had to seek treatment from the VA for his non-service related injuries.  *Id.* at 12, ¶¶ 5-6.

In November 2019, Plaintiff filed a fourth LS-203, adding the "newly discovered Peroneal Longus tendon trauma and cervical herniation trauma," allegedly suffered from his August 2018 examination by Dr. Kent Feldman.  ECF No. 1 at 12, ¶ 7.

On January 30, 2020, Plaintiff alleges that he attempted to present the previously stated allegations to the ALJ at a hearing but was denied the opportunity to be heard.  ECF No. 1 at 13, ¶ 4.  He claims the ALJ denied his requests to be re-heard regarding his request for an independent medical examination and financial restoration of the missing 20 months of benefits he alleges he was owed.  *Id.* at 13, ¶ 5.  He pleads that the ALJ remanded the case back to the OWCP for administration of his claim.  *Id.*  He also alleges that the ALJ approved stipulations that GDIT had typed up, stating that Plaintiff would agree to accept half of his entitlement, which the ALJ told Plaintiff that if he did not accept, it would be at least a year before he would receive compensation.  *Id.* at 13, ¶¶ 5-7.  Plaintiff states that he "shall appeal the stipulations" but has yet to do so.  *Id.* at 13, ¶ 7; *but see* 20 C.F.R. § 702.393 (requiring an appeal of an ALJ's order to be brought to the Benefits Review Board within 30 days of the order).

In March 2020, Plaintiff pleads he was still employed, and thus, could not get unemployment, but his workers compensation benefits ceased.  ECF No. 20-1 at 8:19-21.

4

Plaintiff alleges that "[t]he OWCP was ordered by a federal judge to administer [his] claim, on two separate occasions[,] and still neglected to comply."  ECF No. 1 at 14, ¶ 7. Plaintiff claims that 41 bi-weekly entitlements were never paid to him. *Id.* at 4.  He pleads, *inter alia*, that Defendant negligently investigated and failed to properly administer his claim made pursuant to the LHWCA for his injuries due to the accident, which resulted in the denial of workers compensation benefits to him. *Id.* at 4.  He seeks injunctive relief pursuant to the Federal Tort Claims Act Procedure, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and 2671-2680 (the "FTCA"), and damages pursuant to 42 U.S.C. § 1983 ("Section 1983") based upon "the continuing violations of Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution" arising out of "the negligent mishandling and denial of medical treatment." *Id.* at 1.  He alleges that these actions also violated the LHWCA. *Id.*

### B.    Procedural History

On September 3, 2021, Plaintiff filed his civil rights complaint, alleging six claims for relief for (1) FTCA Right to Entitlement Administered Pursuant to 33 U.S.C. §§ 901 – 950, 20 CFR §§ 702.101- 702.811, 42 U.S.C. § 1983; (2) FTCA Right to Entitlement Administered Pursuant to Statute Under 33 U.S.C. §§ 901 – 950, 20 CFR §§ 702.101- 702.81, and 42 U.S.C. § 1983; (3) FTCA Right to Entitlement Administered Pursuant to Statute Under 33 U.S.C. §§ 901 – 950, 20 CFR §§ 702.101- 702.811, and 42 U.S.C. § 1983[7]; (4) violation of Section 1983 arising out of Article VI, the Supremacy Clause, the Fourth Amendment Right to Freedom From Unreasonable, Seizure of Property, the Fifth Amendment Right to Due Process and Equal Protection, and Violation 15 of 33 U.S.C. § 916 Liens Against Longshore Entitlement; (5) FTCA Right to Entitlement Administered Pursuant to Statute Under 33 U.S.C. §§ 901 – 950, 19 and 20 CFR §§ 702.101- 702.811, and 42 U.S.C. § 1983; and (6) violation of Section 1983 arising out of the Fifth Amendment Right to Due Process and Equal Protection and violation of 33 U.S.C. Longshore

---

[7]    Although the first, second, third, and fifth claims for relief appear identical, each claim contains different facts.

Entitlement to Adequate Medical Treatment.  ECF No. 1.

On September 3, 2021, a process server mailed a copy of the complaint via regular mail to Defendant but did not indicate personal service had been made.  ECF No. 3. However, Rule 4(i) of the FRCP sets forth various requirements for serving the United States and its agencies, including, *inter alia*, serving both the United States and Attorney General by certified mail.  Fed. R. Civ. P. 4(i).

Although service had not been completed in accordance with FRCP 4(i), on November 16, 2021, Plaintiff filed a Motion for Entry of Default against Defendant.  ECF No. 3.  On November 17, 2021, the Clerk of the Court entered Defendant's Default.  ECF No. 4.  On November 18, 2021, Defendant filed an *Ex Parte* Motion to Set Aside the Default Pursuant to Rule 55(c) of the FRCP.  ECF No. 5.  On November 19, 2021, Plaintiff filed a Motion for Entry of Default Judgment Against Defendant.  ECF No. 6.

On November 19, 2021, this Court set aside entry of Defendant's default for failure to comply with Rule 4(i) of the FRCP and denied Plaintiff's Motion for Entry of Default Judgment as moot.  ECF No. 7.  On November 29, 2021, Plaintiff filed an opposition to the Court's order, ECF No. 8, but the Court declined to vacate its order that same day, ECF No. 9.

On December 13, 2021, the Court issued an order to show cause as to why the complaint should not be dismissed for failure to prosecute because Plaintiff had still failed to show he had complied with Rule 4(i) of the FRCP.  ECF No. 10.  On December 20, 2021, Plaintiff responded to the order to show cause by providing proof of his compliance with FRCP 4(i).  ECF No. 12.  Also on December 17, 2021, Plaintiff filed a motion to petition the Honorable Cathy Bencivengo to recuse herself, ECF No. 11, which the Court denied on December 30, 2021, ECF No. 13.

On December 30, 2021, the Court issued an order vacating its order to show cause as to why the complaint should not be dismissed.  ECF No. 14.  On January 3, 2022, this case was transferred from Judge Bencivengo to the Honorable Linda Lopez.  ECD No. 15.

On January 14, 2022, Defendant filed its motion to dismiss the complaint pursuant

to Rules 12(b)(1), 12(b)(6), and 41(b) of the FRCP.  ECF No. 16.

On February 28, 2022, Plaintiff filed his motion for leave to amend his complaint. ECF No. 20.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Jurisdiction (Rule 12(b)(1))

Rule 12(b)(1) of the FRCP allows a defendant to seek dismissal of a claim or lawsuit by asserting the defense of lack of subject matter jurisdiction.  Federal courts are courts of limited jurisdiction; thus, district courts only possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  If a court determines at any time it lacks subject matter jurisdiction under Article III or a federal statute, it "must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).  The party seeking to establish federal jurisdiction bears the burden of establishing it.  *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

### B.   Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

Under FRCP 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible to survive a motion to dismiss).  The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff.  *See Manzarek*, 519 F.3d at 1031.  However, a court is not required to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Ninth Circuit has a liberal policy favoring amendments, and thus, leave to amend should be freely granted. *DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). However, a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where . . . further amendment would be futile.").

## C.   Motion for Leave to Amend the Complaint (Rule 15)

Once a responsive pleading is filed, a plaintiff can amend a complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*; *see also Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990) (stating that leave to amend is to be granted with "extreme liberality"). "The power to grant leave to amend, however, is entrusted to the discretion of the district court, which determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin,* 600 F.3d 1191, 1200 (9th Cir. 2010) (quotation marks and citation omitted). Generally, amendments adding claims are granted more freely than amendments adding parties. *Union Pacific R.R. Co. v. Nevada Power Co.,* 950 F.2d 1429, 1432 (9th Cir. 1991).

## IV.   DISCUSSION[8]

Federal courts should address jurisdictional issues before merits issues whenever possible. *See, e.g.*, *B.C. v. Plumas Unified School Dist.,* 192 F.3d 1260, 1264 (9th Cir. 1999) (holding that federal courts are required to examine jurisdictional issues such as standing, even *sua sponte*, if necessary); *see also Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of

---

[8]   The Court considered all arguments advanced by both parties even if those arguments are not discussed in the following section.

8

claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").  Thus, the Court addresses Defendant's jurisdictional concerns first.

### A.    Motion to Dismiss for Lack of Jurisdiction (Rule 12(b)(1))

Defendant argues that Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction because he fails to allege exhaustion of his administrative FTCA remedies.  ECF No. 16 at 2:18-3:4.

Plaintiff's complaint pleads that jurisdiction exists pursuant to 28 U.S.C. § 1331. ECF No. 1 at 1.  Section 1331 vests district courts with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff alleges that this case arises under laws of the United States, namely the LHWCA and 28 U.S.C. § 1343.  ECF No. 1 at 1.  28 U.S.C. § 1343 vests the district courts with original jurisdiction of civil actions authorized by law to (1) "recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42"[9]; (2) "recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent"; (3) "redress the deprivation, under color of any State law … of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States"; or (4) "recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."  28 U.S.C. § 1343(a).

The FTCA requires that before filing a lawsuit, plaintiff must pursue an administrative claim by providing as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury … caused by the negligent or wrongful act or

---

[9]    42 U.S.C. § 1985 pertains to a conspiracy to interfere with civil rights.

1
2
3
4
5
6

> omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

7
8
9
10
11

28 U.S.C. § 2675(a).  The requirement that a plaintiff file an administrative claim prior to filing suit is jurisdictional.  *See Brady v. United States*, 211 F.3d 499, 502-03 (9th Cir. 2000) (holding that the district court did not err in dismissing a plaintiff's complaint for failing to comply with the FTCA's jurisdictional requirement that a plaintiff pursue an administrative claim before filing suit).

12
13
14
15

Here, as Defendant points out, Plaintiff's complaint refers to various hearings, courts, and administrative law judges, but it does not allege the pre-requisite filing and either rejection or failure to act on an administrative claim.  ECF No. 16 at 3:1-4.  Thus, this Court lacks subject matter jurisdiction over Plaintiff's claims.

16
17
18
19
20
21
22
23
24
25
26
27
28

In evaluating whether to dismiss this case *with* or *without prejudice*, the Court finds it must dismiss this case *with prejudice* for two reasons.  First, Plaintiff may not sue the named Defendant.  Plaintiff has sued the United States Department of Labor, Office of Workers Compensation Programs, the federal agency that administers claims under the LHWCA.  However, even though FTCA claims may arise from acts or omissions of United States agencies, like the OWCP, a federal agency may not be sued.  28 U.S.C. § 2679(a).  This is because suits against a federal agency are not authorized where claims are cognizable under 28 U.S.C. § 1346(b).  *Id.*  Section 1346 of Title 28 vests district courts with original jurisdiction of civil actions on claims against the United States" where the plaintiff seeks "money damages … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his … employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

10

Thus, "Congress did not expressly authorize suits against federal agencies under the Federal Tort Claims Act." *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998).  As a result, "[i]ndividual agencies of the United States may not be sued" under the FTCA.  *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984); *see also Hastings v. United States Postal Serv.*, No. 3:16-cv-01259-JM-JLB, 2017 WL 2936781, at *2 (S.D. Cal. July 10, 2017) (granting the defendants' motion to dismiss the plaintiff's claim against the Postal Service, with prejudice, for lack of jurisdiction, because the plaintiff failed to name the United States, and instead, named a federal agency); *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) ("The FTCA is the exclusive remedy for tort actions against a federal agency, and this is so despite the statutory authority of any agency to sue or be sued in its own name.").

Second, even if Plaintiff had sued the correct party, Plaintiff has filed his claims in the wrong court to the extent they are actually an appeal of his denial orders.  *See* ECF No. 1 at 4 (alleging "fraudulent denial of benefit due under the" LHWCA and the denial of "worker's compensation benefits to Mr. Fitzpatrick, who is entitled to such benefits under the Longshore Act").  When a party files a claim under the LHWCA, he or she files the claim with the deputy commissioner, 33 U.S.C. § 919(a), while any dispute as to the outcome of the claim gets referred to ALJs, *id.* at § 919(d).  "The ALJ makes findings of fact and conclusions of law, and issues compensation orders as appropriate." *Thompson v. Potashnick Const. Co.*, 812 F.2d 574, 576 (9th Cir. 1987) (citing 20 C.F.R. § 702.348).  If the claimant seeks further review of the ALJ's order, the LHWCA provides for internal appellate review to the Benefits Review Board ("BRB" or "Board"), 33 U.S.C. §§ 902(20), 921(b)(3), provided the claim appeals within 30 days of the decision or order complained of by him or her, 20 C.F.R. § 702.393.  Any claimant "may obtain a review of [a final] order [of the Board] in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside." 33 U.S.C. § 921(c); *see also Thompson*, 812 F.2d at 576 ("Final orders of the BRB are reviewable by the United

11

1   States Courts of Appeals").

2          Under the LHWCA, the role of the district courts is limited to enforcing orders in a

3   claimant's favor where the employer fails to comply with a compensation order.  *See, e.g.*,

4   33 U.S.C. § 921(d) (providing that "[i]f any employer … fails to comply with a

5   compensation order … that has become final, any beneficiary … may apply for the

6   enforcement of the order to the Federal district court for the judicial district in which the

7   injury occurred); *see also Thompson*, 812 F.2d at 576 (noting "[t]he role of the United

8   States District Courts in this scheme is limited" and only extends "to enforc[ing] an order

9   made and served in accordance with law if the employer has failed to comply").  "The

10  district court cannot affirm, modify, suspend or set aside the order." *Thompson*, 812 F.2d

11  at 576.

12         While Plaintiff refers to himself as "Petitioner" and alleges that his claims fall under

13  various other federal statutes, the Court must look at the nature of the claims rather than

14  their label.  *See, e.g.*, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (stating that

15  the federal pleading rules "do not countenance dismissal of a complaint for imperfect

16  statement of the legal theory supporting the claim asserted").  In fact, a plaintiff is not

17  required to set a legal theory at all so long as the facts alleged state a claim for relief.  *Id.*

18  Here, while Plaintiff alleges he was awarded some benefits that were not paid, *see, e.g.*,

19  ECF No. 1 at 13, ¶ 5 (alleging that he "was forced to accept approximately half of his

20  entitlement in the stipulations"), Plaintiff's claims boil down to a belief that his disability

21  claims were incorrectly decided.  Thus, any issue he has with those claims must be filed

22  with the Ninth Circuit Court of Appeals.  *See Glob. Linguist Sols., LLC v. Abdelmeged*,

23  913 F.3d 921, 922 (9th Cir. 2019) (noting that "petitions for review of compensation orders

24  arising under the Defense Base Act are to be filed directly in the Court of Appeals").  To

25  the extent Plaintiff alleges his claims fall under other statutes, the Court finds, as set forth

26  below, that those claims fail as well.  *See, e.g.*, *De la Cruz Jimenez v. USA*, No. 2:21-CV-

27  4053, 2022 WL 1051736, at *2 (W.D. La. Apr. 7, 2022) ("Because pro se complaints are

28  liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the

                                              12

claims, not the label or characterization of a pro se plaintiff.").

First, Plaintiff alleges a claim against allegedly "rogue federal employees, working for the DOL," who "violated clearly established Fourth Amendment rights to be secure from unreasonable seizures of property and Fifth Amendment rights of due process and equal protection" by denying his benefits due under the LHWCA. ECF No. 1 at 2. He claims that due to these actions, this Court should recognize a damages claim under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *Id.* In *Bivens*, the Supreme Court "recognized for the first time an implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017). However, a *Bivens* claim is only authorized against federal individual actors, and neither Plaintiff's current complaint nor his proposed First Amended Complaint ("FAC") names individual federal actors.

Second, Plaintiff alleges that this case arises under the LHWCA. Third, Plaintiff alleges his claims arise out of 20 C.F.R. 701.101, *et seq.*, which encompasses the Code of Federal Regulations provisions governing claims under the LHWCA. *See, e.g.*, 20 C.F.R. § 701.101(a) (providing that "[t]his subchapter contains the regulations governing the administration of the Longshore and Harbor Workers' Compensation Act"). However, the Court has already noted that to the extent the case arises from that statute and seeks judicial review of the denial of benefits, it needed to be filed in the circuit court of appeals.

Fourth, Plaintiff alleges this case arises under 28 U.S.C. § 1442(a), which governs removal of civil actions directed at the United States or any of its agencies, and as such, does not apply to this case, which was originally filed in federal court.

Fifth, he pleads this case arises under 42 U.S.C. § 1983 ("Section 1983"). Section 1983 governs a civil action for deprivation of constitutional rights but requires allegations of actions violating constitutional rights taken under color of state law. Here, there are no allegations that actions were taken under color of state law. In fact, most of the actions pertain to federal employees although none are individually named. Thus, a Section 1983 action is also inappropriate.

Sixth, Plaintiff alleges this case arises under 28 U.S.C. § 2679(b).  ECF No. 1 at 2. This provision precludes "[a]ny … civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee … without regard to when the act or omission occurred."  28 U.S.C. § 2679(b)(1).  However, the same statute allows actions (1) brought for constitutional violations; (2) brought for violation of a statute authorizing such actions; and (3) against the United States for "injury[,] … loss of property, or … death arising … from the … wrongful act or omission of any employee of the Government while acting within the scope of his … employment," where allowed by sections 1346(b) and 2672 of the same title.  28 U.S.C. § 2679(b)(1)-(2).  28 U.S.C. § 1346(b)(1), in turn, vests the district courts with "exclusive jurisdiction of civil actions on claims [1] against the United States, [2] for money damages, … [3] for injury[,] … loss of property, … or death [4] caused by the … wrongful act or omission of" any government employee "[5] while acting within the scope of his … employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  *See also F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (noting that a claim is actionable under § 1346(b), and therefore, comes within the jurisdictional grant of the FTCA where "it alleges the six elements").  Thus, liability under the FTCA attaches where the Government, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

In sum, even, *assuming arguendo*, that Plaintiff had alleged a constitutional violation, he still could not bring a claim against the United States under the FTCA based on his alleged violations, including violation of Section 1983, because the FTCA does not waive the sovereign immunity for the United States or federal agencies for constitutional torts.  *See F.D.I.C.*, 510 U.S. at 479 (noting that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims").  Thus, the Court **GRANTS** Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).  Although "jurisdiction is the power of the Court to declare the law," *Crigler v.*

14

*Chemonics Int'l, Inc.*, No. 3:17-cv-491-J-34MCR, 2018 U.S. Dist. LEXIS 138520, at *9 (M.D. Fla. Aug. 16, 2018), which suggests the Court could end its analysis here, Plaintiff also seeks to add new parties and allegations in his motion for leave to amend.  Thus, the Court must analyze whether these new parties or allegations could cure the jurisdictional defects in this case.  Because the new parties may be proper parties to this case, the Court evaluates whether his claims, if brought against viable parties, could state a claim for relief under the FRCP.

### B.    Motion to Dismiss for Failure to State a Claim (Rule 12(b)(6))

Defendant argues that the Court should dismiss Plaintiff's complaint because he "fails to articulate how alleged actions by [the] DOL rise to violation of 42 U.S.C. § 1983." ECF No. 16 at 3:16-25.  Plaintiff opposes Defendant's motion without addressing how or why Defendant's arguments are wrong; instead, arguing that the Court should not address Defendant's responsive pleading because the Court should not have vacated entry of Defendant's default and should have granted Plaintiff's motion for default judgment.  ECF No. 17.  Defendant's reply brief points out that Plaintiff's opposition fails to address why his claims are viable, which the Court should construe as consent to granting the motion. ECF No. 18.  As set forth below, the Court agrees with Defendant: Plaintiff's claims fail to state a cognizable claim for relief.  Further, Plaintiff's arguments that Defendant was properly served, and thus, should have been defaulted are incorrect.  The Court addresses Plaintiff's arguments regarding the propriety of even ruling on Defendant's motion first, and once establishing it is appropriate to rule, turns to the merits of Defendant's motion.

#### 1.    *Plaintiff's Argument That Defendant's Motion is Pre-Mature*

In opposing Defendant's motion, Plaintiff argues that he should not have to oppose on the merits because the Court should not be addressing Defendant's motion, and should instead, hear his motion for default judgment.  *See* ECF No. 17.  He contends, *inter alia*, that he assumes the United States Attorney's Office, "as an authorized user of PACER, is subject to immediate notification of any entry filed against the United States."  *Id.* at 2:5-8.  However, as noted by this Court several times, Rule 4(i) of the FRCP requires, at a

minimum, service on the United States Attorney's Office and Attorney General by **certified mail**. Fed. R. Civ. P. 4(i)(1)(A)(i). Here, as the Court noted when it vacated entry of Defendant's default, "there [was] no evidence … the United States Attorney for the Southern District of California was served, as is required," meaning "default should not have been entered." ECF No. 7 at 1:2-28. Nonetheless, Plaintff argues that "[t]he Motion to Dismiss is premature due to the Entry of Default entered by Mr. Fitzpatrick on November 16, 2021, the entry he alleges was vacated in violation of the local rules of Ex Parte, which thereafter denied [him] due process." ECF No. 17 at 2:20-23. He contends that Defendant's attorney filed an *ex parte* contrary to local rules, denying Plaintiff his due process rights to oppose by arguing the merits of Plaintiff's complaint and potentially influencing the decision to vacate the entry of default before Plaintiff could oppose it. *Id.* at 3:3-6. In his opposition, Plaintiff "requests of the court a hearing on the vacated Entry of Default and the circumstances surrounding this, before proceeding with the underlying case, for the above mentioned reasons" because he was denied the chance to timely object to Defendant's *ex parte*. *Id.* at 4:10-15. In other words, Plaintiff's primary argument for denying Defendant's motion is that Defendant's *ex parte* application to vacate entry of default was improper, and the Court should have granted his motion for default judgment.

Plaintiff admits that he did not serve the U.S. Attorney's office because "he was aware that PACER provided service," so he believes "the original complaint entered by Fitzpatrick on September 03, 2021 and the accompanying summons, were served upon registered users of PACER on that day." ECF No. 17 at 2:9-12. Plaintiff further argues the Court's decision vacating entry of default was error because he "believes the U.S. Attorney is registered as a Filing User and therefore gives consent to service of all documents as provided in General Order 550 and the [FRCP] 5." *Id.* at 2:11-13. He states that "[a]ccording to General Order 550, service of documents delivered to the Clerk of the Court and subsequently entered into PACER will automatically generate a Notice of Electronic Filing by the Court's Case Management program and constitutes service of the filed document(s) on Filing Users." *Id.* at 2:16-20. General Order 550 implemented the

16

Electronic Case Filing ("ECF") System in this district.  It begins by noting that "Federal Rules of Civil Procedure 5 and 83 … authorize courts to establish practices and procedures for filing, signing, and verifying documents by electronic means."  General Order No. 550 at 1; *see also* Fed. R. Civ. P. 5 (covering service of papers other than the summons), 83 (allowing district courts to adopt local rules governing their practices that are "consistent with—but not duplicat[ive]—[of] federal statutes and rules").  On the one hand, that order states that the Notice of Electronic Filing ("NEF") "that is automatically generated by the Court's Electronic Filing System constitutes service of the filed document on Filing Users." *Id.* at 2.  On the other hand, General Order 550 only mentions FRCP 5 and 83, not FRCP 4, governing service of process of the summons and complaint.  Further, allowing General Order 550 to permit electronic service of the summons and complaint would conflict with the FRCP in violation of FRCP 83.

*Hastings v. United States Postal Serv.*, No. 3:16-cv-01259-JM-JLB, 2017 WL 2936781, at *3 (S.D. Cal. July 10, 2017) (Miller, J.) shows the flaws in Plaintiff's argument that he properly served the complaint such that the Court should have entered Defendant's default.  In *Hastings*, the plaintiff argued that she "satisfied the government notice provision when the summons and complaint were delivered and electronically mailed to the United States Attorney by way of an automatically generated NEF."  (Internal quotations omitted).  The "[p]laintiff's argument, in a nutshell, [was] that an NEF, sent by the court to an email account maintained by the United States Attorney's Office, constitutes 'process' that is 'delivered' or 'mailed' as the terms are used in Rule 15(c)(2)." *Id.*  The *Hastings* court concluded that when "[r]eading Rule 15(c)(2) [governing relation back of amended pleadings] literally, … it does not embrace automatically generated email notifications of filings that allow the recipients to download the filings."  *Id.* at *4.  Rather, "the plain text of Rule 15(c)(2), its contrast with Rule 5, and the Advisory Committee's guidance all indicate that the government notice provision cannot be satisfied by means of an NEF."  *Id.* at *5.  Thus, the court dismissed the plaintiff's claim against the Postal Service *without prejudice* to the extent she could amend to allege compliance with the

17

FRCP by serving the United States or Attorney General as required by the FRCP. *Id.*

Similar to *Hastings*, this Court finds that the automatically generated NEF was insufficient to provide Defendant notice of this lawsuit such that entry of Defendant's default could have been appropriate. While service of documents other than the complaint may be served through PACER, this is because "[a] motion may be served by various methods that may not be used to serve a summons." *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 928 (9th Cir. 2014) (comparing Fed. R. Civ. P. 4(e) with Fed. R. Civ. P. 5(b)(2)). With respect to a complaint, however, "[a] federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Fed. R. Civ. P. 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1065 (N.D. Cal. 2012) (noting "even in civil cases, actual notice without substantial compliance with the requirements of Civil Rule 4, is not sufficient to bring a defendant within the jurisdiction of the court," so the defendants' notice of the proceeding was relevant but not dispositive); *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir.1986), *cert. denied,* 484 U.S. 870 (1987) (acknowledging that without substantial compliance with Rule 4 "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction"). Thus, because Defendant had not been properly served at the time the Court defaulted Defendant, the Court lacked jurisdiction over Defendant when it entered the default.

Further, a party or that party's counsel of record must explicitly consent to electronic service for such service to be efficacious. Fed. R. Civ. P. 5(b)(2)(E); *see also* Fed. R. Civ. P. advisory committee's note to 2001 amendment (stating that consent must be "express and cannot be implied from conduct"); *Martin v. Deutsche Bank Secs, Inc.*, 676 Fed. Appx. 27, 29 (2d Cir. 2017) (noting that even an attorney's pattern and practice of communicating by e-mail in the underlying arbitration cannot imply consent for electronic service). Consent by an attorney in one case does not apply as to that attorney or client in all other cases. *See Cole-Grice v. Fannie Mae, Nationstar Mortgage, LLC d/b/a Mr. Cooper and JP Morgan Chase Bank, N.A.*, No. 1:19-01287-STA-JAY, 2022 WL 1239868, at *4-5

(W.D. Tenn. Apr. 27, 2022) (adopting the magistrate judge's recommendation that defendants' first requests not be deemed admitted where the plaintiff never consented to e-mail communication for service of discovery, so plaintiff could not have failed to respond).

Here, Defendant never consented to electronic service of the complaint. The fact that the U.S. Attorney's Office is a registered user of PACER does not mean that plaintiffs in every single lawsuit filed against the government may do away with the requirements of Rule 4 of the FRCP just because a NEF will be generated once the complaint is filed. Rather, every plaintiff in every lawsuit against the United States or any of its agencies must serve the U.S. Attorney's Office by following the procedures outlined in Rule 4 of the FRCP. As such, this Court properly vacated the entry of Defendant's default, which should not have been entered in the first place, regardless of whether Defendant sought to vacate it or not, because the Court lacked sufficient evidence that Defendant had been served with process. Thus, despite Plaintiff's arguments to the contrary, the Court finds it appropriate to address the merits of Defendant's motion to dismiss due to failure to state a claim.

### 2.    *Defendant's Arguments That Plaintiff's Claims Fail to State a Claim*

Defendant contends Plaintiff's claims are not plausibly alleged. ECF No. 16. Defendant notes that the "claims are not simple, concise, or direct statements as required by Rule 8, nor are they presented in a substantively intelligible form as required by Rule 10." *Id.* at 4:17-20. Rather, according to Defendant, "the Complaint is fifteen disorganized, single-spaced pages of confusing and conclusory characterizations, compound by the absence of enumeration or chronological structure." *Id.* at 4:20-28 (citing Compl., ECF No. 1 at 14, ¶ 8). It contends that "[t]he Complaint does not meet minimal pleading standards, such that DOL cannot assert further defenses or meet other responsive obligations." *Id.* at 5:11-13 (citing *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991)).

As noted, Plaintiff's opposition solely argues that the Court should have granted his motion for entry of default judgment against Defendant. ECF No. 17 at 1-3. Defendant points out this opposition does not dispute the concerns raised in its motion to dismiss but rather "restates his denied demand for default judgment notwithstanding his initial failure

to serve the Complaint." ECF No. 18 at 2:13-15 (citing ECF Nos. 3, 6-11, 13-14, and 17). Thus, Defendant argues the Court should treat Plaintiff's failure to oppose Defendant's arguments for dismissal as consent to granting its motion. *Id.* at 2:15-21. To the extent Plaintiff has indeed failed to oppose dismissal of his complaint, he has waived any argument against dismissal. Local Rule 7.1(f)(3)(a) requires a party opposing a motion to either file a (1) written opposition or (2) "written statement that the party does not oppose the motion." If an opposing party fails to file the papers in the manner required by the local rules, "that failure may constitute a consent to the granting of a motion or other request for ruling by the court." CivLR 7.1(f)(3)(c); *see also V. V. V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC*, 946 F.3d 542, 547 (9th Cir. 2019) (noting that claims can be abandoned if their dismissal is unopposed). Here, because Plaintiff has used his opposition brief to argue, not that has complaint is sufficient, but rather that the Court should have granted default judgment in his favor, he has waived the right to raise any argument that his complaint is adequately pled. *See, e.g.*, *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1491, n.1 (2019) (deeming an argument waived where the defendant failed to raise an issue in the opposition brief). However, due to the Court's preference for deciding issues on the merits, the Court addresses the merits of Defendant's substantive arguments in favor of dismissal.

Rule 41(b) of the FRCP states that "[i]f the plaintiff fails to … comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Rule 8 of the FRCP ("Rule 8"), is one such rule that Plaintiff needed to comply with and requires that a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Defendant's reply argues Rule 8's requirements are not met because its "allegations are not clear or organized enough to allow Defendant to understand Plaintiff's grievance with the Department of Labor and why a lawsuit in this Court is appropriate—much less to respond, meet and confer, or attempt to resolve Plaintiff's concerns." ECF No. 18 at 2:3-6. For example, Defendant notes that "while the Complaint alleges some injury, it does not plainly

20

explain how any actions by the Department of Labor give rise to tort liability or violations of 42 U.S.C. § 1983." *Id.* at 2:7-9.

The Ninth Circuit has explained why complaints which fail to clearly set forth who did what, and when, fail to comply with Rule 8:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges. As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiff[ ] filed, and must prepare outlines to determine who is being sued for what. Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at trial which they reasonably did not understand to be in the case at all …
>
> The judge wastes half a day in chambers preparing the "short and plain statement" which Rule 8 obligated plaintiffs to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case[s] who follow the rules, as well as defendants in the case in which the prolix pleading is filed.
>
> ….
>
> Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.

*McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming dismissal of a complaint pursuant to FRCP 8). Here, the Court finds that this same rationale warrants dismissal of Plaintiff's complaint in this case. Further, Rule 9(b) of the FRCP also requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." There can be no doubt that Plaintiff's conclusory allegations of fraud and misrepresentations do not meet the particularity standards set out in FRCP 9. Rule 10(b) of the FRCP also requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Neither Plaintiff's original nor his proposed FAC do this in the appropriate manner.

Thus, the Court also **GRANTS** Defendant's motion to dismiss for failure to state a claim for relief.  However, again, because Plaintiff filed a separate motion for leave to amend, the Court must evaluate whether those new facts or legal theories discussed in his motion could state a claim for relief.

### C.    Motion for Leave to Amend the Complaint (Rule 15)

Once a responsive pleading is filed, a plaintiff can amend a complaint "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Here, because Defendant has already responded to Plaintiff's complaint by moving to dismiss, Defendant does not consent to amendment, and Plaintiff must acquire the Court's leave to amend his complaint.  "The court should freely give leave when justice so requires."  *Id.*; *see also Morongo*, 893 F.2d at 1079 (stating that leave to amend is to be granted with "extreme liberality").  At the same time, courts have broad discretion to grant leave to amend a complaint.  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 420 (9th Cir. 2020).  This discretion includes the right to deny leave to amend where amendment may prove to be an effort in futility.  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

As set forth below, in addition to the procedural deficiencies associated with Plaintiff's motion, this Court finds granting Plaintiff leave to amend would be futile.

#### 1.    *Plaintiff Failed to Secure a Hearing Date for His Motion*

As an initial matter, Local Rule 7.1 requires that a hearing date must be requested from the clerk of the judge to whom a case is designed "for any matters on which a ruling is required."  CivLR 7.1(b); *see also id.* at subdivision (f) (requiring a motion to include the "hearing date and time"); Chambers Rules of the Hon. Linda Lopez, Rule 3(B) (requiring parties to set a hearing thirty-five (35) days following the motion's filing date).  Here, Plaintiff never requested a hearing date, and as such, the Motion should have been rejected.  However, again, due to the Court's preference for hearing issues on the merits, it addresses the issues at hand.

#### 2.    *Plaintiff Failed to Comply with the Local Rules*

Local Rule 15.1(b) requires any motion for leave to amend a complaint to be

accompanied by "(1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading."   Here, Plaintiff has filed a motion seeking leave to amend the complaint but has not provided a redlined copy of the proposed amended complaint in violation of the Local Rules.  Rather, the proposed amended complaint is an exact duplicate of his motion for leave to amend, and the Court was not provided with a redlined version showing how the proposed amended complaint differs from the original complaint.  Despite these additional procedural deficiencies, the Court still addresses whether Plaintiff should be permitted to amend his complaint.

### 3.   *Amendment Would be Futile*

Plaintiff argues that "[t]hrough the Amended Complaint, Plaintiff seeks to add defendants to the original complaint, who are active participants in the alleged misrepresentation of medical facts and concealment fraud[,] which result in consequences which were completely avoidable."  ECF No. 20 at 2.  The two defendants he seeks to add are GDIT and Broadspire, and he alleges these two defendants conspired to conceal information regarding additional further injuries for which he should have received benefits.  Plaintiff admits "the Court may refuse to allow an amendment that fails to state a cause of action because it would not survive a motion to dismiss."  ECF No. 20 at 2.  However, he argues that his amended complaint states viable claims against all Defendants, and that "there will be no futility resuling from Plaintiffs' [sic] Amended Complaint."  *Id.*

In determining whether a plaintiff should be granted leave to amend, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *Moore*, 885 F.2d at 538.  For example, in *Parents for Privacy v. Barr*, 949 F.3d 1210, 1239 (9th Cir. 2020), the Ninth Circuit affirmed the district court's denial of leave to amend because "[f]urther amendment would simply be a futile exercise."  It reasoned that "[t]he problem with Plaintiffs' complaint, however, is not the

sufficiency of their factual allegations" but "[r]ather, as we have explained above, Plaintiffs' legal theories fail." *Id.* There, "[a]mending the complaint [would] not change, for example, the extent of the rights that are protected." *Id.*

Plaintiff's original complaint pleads that his claims fall under the LHWCA. *See* ECF No. 1 at 2:13-15 (alleging that Defendant "***neglected*** to properly administer his LHWCA claim") (emphasis added). However, his motion for leave to amend the complaint argues that the Court should grant leave to amend because his claims do not fall within the LHWCA's exclusivity provisions as those provisions only cover accidents, and his claims arise from "intentional" acts. *See* ECF No. 20-1 at 2:19-27 (arguing that if there is no accident, there is no liability and no remedy under the LHWCA). Plaintiff's amended complaint even admits he "is aware of the Exclusive Liability protection normally afforded the GDIT/Broadspire under Title 33 U.S.C." *Id.* at 4:21-23. However, he seeks to allege that his claims fall within the tortious exception to the exclusive liability doctrine. *Id.* at 5:5-7.

"In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal 'without contradicting any of the allegations of [the] original complaint.'" *Wehlage v. EmPres Healthcare, Inc.*, 791 F. Supp. 2d 774, 781 (N.D. Cal. 2011) (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). "Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading." *Id.* Thus, where a plaintiff cannot avoid dismissal unless he amends the complaint in such a manner that it contradicts the allegations of the original complaint, the Court should dismiss the original complaint *with prejudice* and deny leave to amend. *Reddy*, 912 F.2d at 296-97 (affirming the district court's ruling to dismiss a complaint *with prejudice* where amendment would not cure the deficiencies in the complaint, and "[i]t would not be possible for [the plaintiff] to amend his complaint … without contradicting any of the allegations of his original complaint"). Here, Plaintiff's allegations that his claims no longer fall within the LHWCA are inconsistent with the allegations of the

1    original complaint and appear to be an attempt to sidestep Defendant's arguments that this

2    Court should dismiss the case on jurisdictional grounds.  *See, e.g.*, *Foster v. Wilson*, 504

3    F.3d 1046, 1052-53 (9th Cir. 2007) (affirming dismissal of the complaint where the

4    amended complaint contained statements inconsistent with the original complaint).

5          Even if Plaintiff's allegations in the amended complaint were consistent with the

6    original complaint, dismissal would still be appropriate because despite his allegations the

7    LHWCA does not apply, this case falls within its exclusivity provisions.  The LHWCA

8    explicitly notes it is the exclusive source of compensation for workplace injuries by stating:

> **The liability of an employer** … **shall be exclusive** and **in place
> of all other liability** of such employer to the employee …
> *except that* **if an employer fails to secure payment of
> compensation**[10] as required by this chapter, **an injured
> employee** … **may** elect to claim compensation under the chapter,
> or to **maintain an action at law** or in admiralty for damages on
> account of such injury.

14   33 U.S.C. § 905(a) (emphasis added).  Thus, "[w]hen the LHWCA applies, its remedy is

15   'exclusive and in place of all other liability of the employer to the employee.'"  *Cruz v.

16   Nat'l Steel & Shipbuilding Co.*, 910 F.3d 1263, 1267 (9th Cir. 2018) (quoting 33 U.S.C. §

17   905(a)).  When an injury covered by the LHWCA arises, the employee forfeits his or her

18   common law rights of recovery for work-related injuries in exchange for guaranteed

19   compensation from the employer or its carrier.  *Id.*  "An employer is thus immune from

20   any suit seeking further recovery for the same injury."  *Id.*; *see also* ECF No. 20-1 at 8:9-

21   14 (admitting "employees surrender their common-law remedies against their employers

22   for work-related injuries" in exchange for the LHWCA requiring employers to obtain

23   compensation for injured employees that provides them with immunity from tort suits).

24         To the extent Plaintiff claims that bringing in his employer (GDIT) and his

---

10     Here, Plaintiff makes a conclusory argument that his employer reported his injury in
a delinquent manner, but he pleads no facts to support this conclusory allegation.  *Compare*
ECF No. 1 at 5 (pleading GDIT reported the injury five months delinquent) *with Iqbal*, 556
U.S. at 686 (noting that "the Federal Rules do not require courts to credit a
complaint's conclusory statements without reference to its factual context").

employer's insurance carrier (Broadspire) takes this case outside of the realm of the LHWCA, he is also incorrect. *See, e.g.*, *Dyer v. Cenex Harvest States Coop.*, 563 F.3d 1044, 1046 (9th Cir. 2009) (noting that the plaintiff "filed a claim for hearing loss under the LHWCA against Cenex and its workers' compensation insurance carrier, Liberty Mutual Insurance Company) (citing 33 U.S.C. § 908(c)(13)). The LHWCA explicitly provides for actions against an employer or the employer's workers compensation carrier.[11] *See* 33 U.S.C. § 935 ("In any case where the employer is not a self-insurer, … the Secretary shall by regulation provide for the discharge, by the carrier for such employer, of such obligations and duties of the employer in respect to such liability, imposed by this chapter upon the employer."); *see also Cortez v. Lamorak Ins. Co.*, No. 20-2389, 2022 U.S. Dist. LEXIS 64449, at *12 (E.D. La. Apr. 6, 2022) (noting that "[t]he Fifth Circuit has 'held that the LHWCA impliedly grants the employer's insurance carrier, and the insurance carrier of co-employees, the same immunity which it grants the employer and co-employees'") (quoting *Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 811 (5th Cir. 1988)). Further, to the extent an employer or carrier makes a false statement, misrepresentation, or conceals facts for the purpose of denying a claim, as Plaintiff alleges GDIT and Broadspire did, the LHWCA already set out penalties for this behavior, so such behavior is also covered by the LHWCA. It provides that "[a] person including, but not limited to, an employer … or an employee of an insurance carrier who knowingly and willfully makes a false statement or representation for the purpose of reducing, denying, or terminating benefits to an injured employee … shall be punished by a fine not to exceed $10,000." 33 U.S.C. § 931(a).

In sum, "the Ninth Circuit has held that the LHWCA, which is incorporated into the [Defense Base Act, 42 U.S.C. § 1651 *et seq.*], displaces common-law causes of action."

---

[11]     That being said, Plaintiff does not even provide enough facts to allow the Court to determine if GDIT qualifies as an employer under the LHWCA. *See* 33 U.S.C. § 902(4) (defining "employer" as "an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, … or other adjoining area customarily used … in loading, unloading, repairing, or building a vessel)").

*Harty v. Cont'l Ins. Co.*, No. 13-cv-02545-WHO, 2013 WL 6406908, at \*1, 2013 U.S. Dist. LEXIS 172412, at \*1, 6-8 (N.D. Cal. Dec. 6, 2013) (citing *Sample v. Johnson*, 771 F.2d 1335, 1344-47 (9th Cir. 1985) (holding state claim for wrongful refusal to pay barred by exclusivity provisions of LHWCA)).

In *Sample v. Johnson*, the Ninth Circuit "conclude[d] that the district court erred in refusing to dismiss the claims against the government as moot but … affirm[ed] the dismissal of the claims against the employer" due to the LHWCA's exclusivity provisions. 771 F.2d at 1338.  The *Sample* injured employees, like Plaintiff here, claimed that the private defendants caused him injuries apart from those covered by the LHWCA by controverting "their claims despite knowledge that the workers were entitled to compensation."  *Id.* at 1343-44.  However, the court dismissed the claims against the private defendants because the "injured longshoreman had no 'private right of action' to sue for damages in excess of those prescribed by the LHWCA where the alleged damages related to section 907 and 908 of the Act."  *Id.* at 1344-45 (noting that section 907 "covers the employer's responsibility for furnishing the injured worker with medical services and supplies, while the latter provision covers compensation for disability").  The Ninth Circuit noted that other district courts had held that "[n]othing short of specific intent to injure the employee falls outside the scope of § 905(a)" to allow an employee to maintain a tort action against the employer.  *Id.* at 1346-47 (citing cases).  The court found cases alleging "ordinary refusal to pay" inapposite because "most worker's compensation statutes, like the LHWCA, have penalty provisions for wrongful failure to pay."  *Id.* at 1347.  Thus, "[e]ven if the exclusivity provision of the LHWCA is not read to bar the putative cause of action for wrongful refusal to pay, [its] penalty provision should serve the same purpose."  *Sample*, 771 F.2d at 1347.  While it acknowledged that the penalty provisions may be "inadequate to fully compensate a worker who has been harmed by an employer's refusal to pay when due," it also noted that that "problem requires a political solution."  *Id.* at 1347 (citing *Goetz v. Aetna Cas. and Sur. Co.*, 710 F.2d 561, 564 (9th Cir. 1983)).  Almost thirty years after *Sample*, in *Harty*, the Northern District of California also found the LHWCA's

exclusive remedy barred claims where the plaintiff, like Plaintiff here, alleged that his employer's workers compensation carrier negligently denied his DBA benefits and failed to provide statutorily required benefits. 2013 U.S. Dist. LEXIS 172412 at *7 (citing, *inter alia*, *Barnard v. Zapata Haynie Corp.*, 975 F.2d 919, 920 (1st Cir. 1992) (holding that the LHWCA preempts claims for intentional failure to make timely compensation payments, as well as willful and malicious refusal to pay)).

Similar to the plaintiffs in *Sample* and *Harty*, Plaintiff alleges Defendant, along with GDIT and Broadspire, denied his claims, which he alleges caused intentional secondary injuries that bring his claims outside of the LHWCA's exclusivity provisions. *See* ECF No. 1 at 6 (alleging Defendant intentionally failed to perform duties). However, he falls short of alleging facts showing the currently named Defendant or proposed defendants intentionally injured him. Rather, Plaintiff conclusorily alleges that Defendant performed intentional acts, such as intentionally neglecting to investigate or properly administer his claim, but the facts alleged do not support intentional action on their part.

A plaintiff does not need to plead facts "peculiarly within the opposing party's knowledge"; however, the plaintiff must plead such allegations "based on information and belief" but only where those "allegations are accompanied by a statement of facts upon which the belief is founded." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 493–94 (9th Cir. 2019) (quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other grounds as stated in Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002), (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 416 & n. 96 (1969))). Here, Plaintiff contends that "[t]he misrepresentation of medical facts … was deliberate with the purpose of denying him adequate treatment for compensable injuries sustained while in the course of his normal duties." *Id.* at 3:16-18. However, he fails to plead any nonconclusory facts that indicate Defendant, GDIT, or Broadspire denied or failed to investigate Plaintiff's benefits claim with the intent to injure him. *Compare* ECF No. 20-1 at 4:3-7 (pleading that "the LHWCA defines an injury as an accident and that the plain meaning of the term accident does not include conscious acts

28

like the intentional torts alleged here") *with Schertzer v. Bank of Am., N.A.*, 445 F. Supp. 3d 1058, 1077–79 n.7 (S.D. Cal. 2020) (Miller, J.) (noting that "[c]onclusory allegations … are insufficient to state a claim"). In fact, Plaintiff argues that "[h]e will show that the Defendant(s) cannot claim this protection in the instant case, that through fraud and misrepresentation of medical facts the employer/carrier has willingly abandoned 33 U.S.C. section 905 protection." ECF No. 20-1 4:23-25. However, this argument admits that neither his original nor his amended complaint plead such facts.

Further, while Plaintiff admits the December 2016 slip and fall was an accident falling under the LHWCA, he argues that his PB tendon injury was not a "sudden occurrence  referable to a definite time or place" other than when the first MRI of his ankle was taken on March 30, 2016. ECF No. 20-1 at 3:1-6. Thus, he argues that he is not barred from any workers compensation laws from bringing negligence claims regarding the concealment of the tendon injury. *Id.* at 3:10-11. He argues that the claims administrator for Broadspire, GDIT's workers compensation carrier, determined that Plaintiff's ankle was normal when the radiologist, Dr. Kakimoto, along with subsequent doctors, determined it was not normal. *Id.* at 6:5-9. He pleads that because the right ankle MRI was withheld from the doctor who performed Plaintiff's IME, he was then rated as having a zero percent disability and maximum medical improvement. *Id.* at 6:11-15. Again, such claims that an employer or carrier concealed a covered injury are covered by the LHWCA. 33 U.S.C. § 931(a). Additionally, Plaintiff does not plead any nonconclusory facts that would allow the Court to plausibly infer that the tendon injury is not unrelated to the original accident falling under the LHWCA.

"In any proceeding for the enforcement of a claim for compensation under [the LHWCA] it shall be presumed, in the absence of substantial evidence to the contrary …. [t]hat the claim comes within the provisions of this chapter." 33 U.S.C. § 920(a). Here, Plaintiff has provided nothing more than conclusory allegations that Defendant's actions were intentional, such that they would fall outside of the LHWCA's exclusivity provisions. In the absence of substantial evidence showing intentional acts, the presumption that this

case falls within the LHWCA's exclusivity provisions remains.  Further, like Plaintiff's original complaint, Plaintiff's proposed FAC fails to allege exhaustion of administrative remedies or compliance with the FTCA or LHWCA.  It also continues to fail to comply with the FRCP requiring numbered paragraphs and a clear statement of his claim for relief. Both Plaintiff's original and proposed amended complaint also fail to elaborate on (1) his role or position with his employer or how Plaintiff was injured which is relevant to the application of the LHWCA; (2) the outcome of each of his claims; and/or (3) whether Plaintiff appealed those claims. All of these are relevant to the Court's jurisdiction. Plaintiff's allegations are also contradictory.  For example, he alleges that he is still an employee, so he cannot collect unemployment (and is plausibly collecting income), but he also complains that all his workers compensation benefits ceased in March 2020.

Plaintiff's motion for leave to amend also fails to state how or why leave to amend would cure the inadequacies pointed out by Defendant.  The facts, as pled, in the aforementioned claims simply do not give rise to plausible claims.  As such, as in *Barr*, "[f]urther amendment would simply be a futile exercise" because Plaintiffs' legal theories fail as a matter of law.  949 F.3d at 1239.  Thus, the Court exercises its broad discretion to deny leave to amend.  *Nguyen*, 962 F.3d at 420.

Thus, the Court **DENIES** Plaintiff's motion for leave to file his FAC.

## V.    CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1.    Defendant's Motion to Dismiss the Complaint is **GRANTED** *with prejudice*.

2.    Plaintiff's Motion for Leave to File the First Amended Complaint is **DENIED**.  Plaintiff must file any claims pertaining to the alleged wrongful denial of his benefits under the LHWCA with the Ninth Circuit Court of Appeals.

3.    The Clerk of the Court is directed to terminate this case.

**IT IS SO ORDERED.**

DATED:    May 16, 2022

_____
**HON. LINDA LOPEZ**
United States District Judge

30